```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Charles W. Carter,              :

    Plaintiff,                  :      Case No. 2:05-cv-0807

    v.                          :      JUDGE SARGUS

Pat Hurley, et al.,             :      MAGISTRATE JUDGE KEMP

    Defendants.                 :


<u>REPORT AND RECOMMENDATION</u>

On August 31, 2005, Charles W. Carter, a prisoner proceeding <u>pro se</u>, filed a complaint pursuant to 42 U.S.C. §1983 alleging, *inter alia*, that the defendants in this case[1] prevented Mr. Carter from serving pleadings to the defendants named in case number 2:05-cv-380.[2]  Additionally, Mr. Carter alleges that the defendants in this case "stole" money from Mr. Carter's inmate account and intentionally limited Mr. Carter's access to the prison library.  In filing this action, Mr. Carter paid the $250

---

[1] The defendants in this case are Pat Hurley, Warden at the Ross Correctional Institution ("RCI"); Mary Anne Reese, Assistant Attorney General, Corrections Litigation Section; Robert Whitten, Institutional Inspector at RCI; Nash, School Administrator at RCI; Williams, Librarian at RCI; Lieutenant Kearns, Officer in charge of the mail room at RCI; Sergeant Johnson, mail room supervisor at RCI; Kerry Chambers, Deputy Warden of Administration at RCI; Nancy Davis, cashier at RCI; K. Gilem, assistant cashier at RCI; Jim Petro, Ohio Attorney General; Reginald A. Wilkison, Director of the Ohio Department of Rehabilitations and Corrections; Cheryl Jorgense-Martinez, Chief Inspector of the Department of Rehabilitations and Corrections; and Linda Coval, Assistant Chief Inspector of the Department of Rehabilitations and Corrections.  All defendants were sued in their individual and their official capacities.

[2] Unless otherwise noted, any use of "defendants" in this Report is a reference to the defendants named in this cause of action.

filing fee, but because Mr. Carter is a prisoner, this Court must screen the complaint under 28 U.S.C. §1915A before the case can proceed in due course. McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997)(holding that even if an inmate tenders the requisite filing fee, the district court must still examine the complaint under 28 U.S.C. §1915A). For the following reasons, this Court recommends that Mr. Carter's complaint be dismissed under 28 U.S.C. §1915A for failing to state a claim on which relief can be granted.

28 U.S.C. §1915A states that if a civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. Should the complaint contain any allegations that do not fall within 28 U.S.C. §1915A, the district court must then examine the complaint under 28 U.S.C. §1915(e)(2), which states:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that
> \*\*\*
> (B) the action or appeal –
> (i) is frivolous or malicious
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed as frivolous only when the plaintiff fails to present a claim with an arguable or rational basis in law or fact. See id. at 325. Claims which lack such a basis include those for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which does not exist, see id. at 327-28, and "claims describing

fantastic or delusional scenarios, claims with which federal district judges are all too familiar." Id. at 328; see also Denton v. Hernandez, 504 U.S. 25 (1992). A complaint may be dismissed for failure to state a claim upon which relief can be granted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Pro se complaints are to be construed liberally in favor of the pro se party. Haines v. Kerner, 404 U.S. 519 (1972). It is with these standards in mind that this Court will review Mr. Carter's complaint.

I.

It appears from Mr. Carter's complaint that he is alleging two separate "denial of access to the court" claims in his complaint. The first claim appears to result from the defendants' alleged failure to serve a copy of his complaint and other pleadings in case number 2:05-cv-380 upon the opposing party. The second stems from the alleged limited number of hours the legal library is available to Mr. Carter.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court recognized the fundamental constitutional right of access to the courts. The Court opined that in cases of habeas corpus and civil rights actions challenging conditions of confinement, prison authorities were required to assist prisoners in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law. Id. A claim of a denial of access to the courts is not limited solely to lack of access to libraries and legal assistance, however, but also includes a state's failure to ensure prisoners access to pens and paper, notarial services, and stamps. Id. at 824-25; see also Looper v. Gibson, 63 Fed.Appx. 877, 878 (6th Cir. 2003). In essence, the

3

state does not need to provide a "particular methodology but rather the conferral of a capability- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996). The Court elaborated:

> In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences...and in order to challenge the conditions of their confinement.

Id. at 355.

The Court held that Bounds did not create an abstract, free-standing right to access to courts. Id. at 351. Rather, the Court stated that in order for a prisoner to make a claim for a violation of access to the courts, the prisoner must show "actual injury," which cannot be shown "simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." Id. Instead, the Court held that "the inmate...must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. If a prisoner can show that he has somehow been prejudiced in his lawsuit, then the prisoner may have a legitimate legal claim. Twyman v. Crisp, 584 F.2d 352, 357 (10th Cir. 1978); accord Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985); see also Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996)(requiring a prisoner to show delay caused by prison officials caused actual prejudice in the prisoner's case); accord Winburn v. Howe, 43 Fed.Appx. 731, 734 (6th Cir. 2002).

### A.

In Mr. Carter's first cause of action, the complaint

(reproduced verbatim) states, in relevant part, that:

> The Plaintiff filed a Federal Civil Action, Case No. C2 05 380, against Defendants.... These Defendants failed to respond timely, to that complaint, thereby falling into Default. The Defendants have attempted to prevent the Plaintiff from responding to any motions or actions they might file. Thereby, interferring with Plaintiff's right, "to petition the Goverment for a redress of grievance."
>
> Defedant Hurley and Whitten first stopped service of Defendants in Case No. C2 05 380. Plaintiff informed Defendant Hurley's supperior...with no response.... Plaintiff also informed Mr. Whitten's supperior ...again with no response.... Defendants Hurley and Whitten contacted Defendant Reese...who unlawfully advised Defendant Hurley and Whitten, to intersept Legal Documents being served on other Defendants.... Plaintiff informed Defendant Reese's supperior...as to Defendant Reese's unlawful advice with no response. The plaintiff attempted to serve the Defendants a third time, before Defendant Reese filed her Notice of Appearance. Plaintiff first attempt to serve the Defendants was through the interinstatutional mail system known as the KITE system. The KITE system is used for communication between inmates and Correction Officers and instutitional employees. Defendant Reese told Defendants Hurley and Whitten that the KITE system was not a legal means of service. However, Fed. R. Civ. P. 5 simple states "shall be served upon each of the parties." Fed. R. Civ. P. 4 Summons (c)(2) Service may be effected by any person who is not a party and who is at least 18 years of age. The KITE mailings are picked up by the Mailroom Officers or night officer, who were not a party and are over the age of 18. These officers deliver these mailings to persons the mailings are addressed to. Plaintiff finds no violation of Fed. R. Civ. P. In using this methid of service.

> On June 9, 2005, Plaintiff was called to RCI mailroom and given the documents, with a letter from Defendants Hurley and Whitten....
>
> After recieving the documents back, Plaintiff packaged the documents paid First Class Postage and mailed the documents. Again, Defendants Hurley and Whitten intersepted the documents, now U.S. Mail, tampering with U.S. Mail, and again interferring with service of Defendants. Plaintiff, was again called to RCI mailroom, on June 16, 2005, and again given the documents with another letter from Defendants Hurley and Whitten....
>
> Plaintiff again attempted to serve the documents a few at a time through the KITE system. Plaintiff was called to Defendant Whitten's Office and threstened with disaplinary action if Plaintiff attempted to serve his Defendants again. When Plaintiff attempted to explain the requirements of Federal Rules of Civil Procedures, Defendant Whitten told Plaintiff, "shut up, I don't care what Federal Rules say! Don't send these again, I'll make that an order!!" Plaintiff requested that order in writing. Defendant Whitten said he would put it in writing, however, he failed to do so.

Complaint at pp. 6-8. (internal citations omitted).

It appears from the complaint that Mr. Carter has failed to allege a set of facts in support of his claim which would entitle him to relief if proven to be true. Preliminarily, however, this Court notes that it appears from Mr. Carter's complaint in Case No. 2:05-cv-380 that Mr. Carter is challenging the conditions of his confinement. Specifically, Mr. Carter alleges that the Ross County Institution does not have smoke-free housing available to inmates, and, therefore, Mr. Carter is continuously subjected to second-hand smoke in violation of the Constitution. See Wolff v. McDonnell, 418 U.S. 539, 579 (1974)(extending access to court

6

claims to also include civil rights action under 42 U.S.C. §1983 for prisoners to challenge conditions of confinement.)

Further, this Court concludes that the defendants' alleged actions of deliberately failing to transmit Mr. Carter's pleadings, including Mr. Carter's allegation that defendants refused to mail pleadings via the U.S. Postal Service, presents a claim with an arguable and rational basis in law.  By allegedly preventing Mr. Carter from serving pleadings challenging the conditions of his confinement, the prison is arguably depriving Mr. Carter of the tools necessary to effectuate a successful legal claim.  See, e.g. Goff v. Nix, 113 F.3d 887 (8th Cir. 1997)(holding that preventing an inmate from retrieving legal papers from the inmate's jailhouse lawyer was a denial of access to the courts).

Nevertheless, the Court concludes that Mr. Carter's complaint fails to state a claim of "actual injury" to pending litigation.  As stated *supra*, in order for an inmate to succeed in a claim of a violation of his or her access to the courts, the inmate must show that the defendants' actions caused *prejudice*. The complaint does not allege how the defendants' conduct prejudiced him in the course of his litigation in 2:05-cv-380 or hindered his efforts to pursue a legal claim.  The Court notes that Case No. 2:05-cv-380 is still pending and that Mr. Cooper has been able to file numerous documents in that case. He has not pointed to any adverse consequences that have arisen from his alleged inability to serve (as opposed to file) legal documents. Moreover, Mr. Carter has not identified a single claim or issue that he has been unable to raise or file because of the defendants' alleged actions.  See Winburn, 43 Fed.Appx. at 734. Accordingly, without showing "actual injury" it appears beyond doubt that Mr. Carter can prove no set of facts in support of his claim which would entitle him to relief.

7

B.

In Mr. Carter's second access to the court claim, Mr. Carter claims that the prison library's hours of operation fail to comply with an Ohio Department of Corrections policy. The complaint (again reproduced verbatim) states:

> An ongoing violation at RCI is violation of DRC policy 58 LIB 01...which sets the number of hours the Library/Law Library shall be accessable to inmates. DRC policy 58 LIB 01 B. Availability of services 1. General Population Services a. states:
>
> Library services shall be available to the inmate population daily, to include evenings and weekends. Excluding exceptional circumstances, the library shall be open and accessible to inmates no less than twenty-eight total hours during the week. Hours of operation must include six hours on the weekend and at least two evening sessions. A weekend session that includes evening hours can count as one of the two evening sessions.
>
> This issue has been raised repeatedly and Law Suites have been filed.... Defendant Nash has repeatedly been informed of this violation, however fails to correct the violation.
>
> Since the Plaintiff's filing of Case No. C2 05 380, Defendants have further reduced the Plaintiff's access to the Law Library from about thirteen hours to just nine hours a week.

Complaint at 11-12.

In <u>Walker</u>, inmates challenged the number of hours the library was accessible as an access to the court claim. The Court of Appeals rejected this argument and held:

> In *Twyman v. Crisp*, a prisoner who was allowed use of the prison law library only two hours per week claimed that he had been denied adequate access under *Bounds*. The court found no constitutional deficiency in

8

> light of the fact that the prisoner possessed
> the legal material he needed to pursue his
> claim. If appellant [the prisoner] could
> show that he has somehow been prejudiced in
> any of his various lawsuits, he might perhaps
> have a legitimate claim. Twyman could not,
> however, establish that he himself had ever
> been impeded in attempting to gain access to
> the courts....

Id. at 932 (internal citations and quotations omitted).

After reviewing this allegation in light of Walker and Lewis, this Court again concludes that Mr. Carter fails to state a claim of "actual injury." In particular, while the prison library hours of operation may fail to comply with the Ohio Department of Corrections policy, restricted access to the law library is not per se a denial of access to the courts. See id. (citing United States v. Evans, 542 F.2d 805 (10th Cir. 1976)). Mr. Carter has failed to plead any prejudice resulting from the alleged reduction of library hours. Specifically, Mr. Carter has failed to claim that he has somehow been prejudiced in any lawsuit by the limited number of hours the library is available.

It appears beyond doubt that Mr. Carter can prove no set of facts in support of his claim which would entitle him to relief because Mr. Carter failed to plead prejudice in his complaint in both access to the court claims. Thus, Mr. Carter's claims of a denial of access to the courts should be dismissed pursuant to 28 U.S.C. §1915A for failing to state a claim.

II.

In Mr. Carter's second claim, he argues that the prison "stole" money out of his inmate account. The complaint (again quoted verbatim) states:

> On June 27, 2005, Plaintiff went to the
> commissary expecting to have over $90.00 to
> spend, instead there was only $9.32 on
> Plaintiff's account. On June 28, 2005,
> Plaintiff received a document from Cashier's

9

> Office stating $82.40 had been taken from Plaintiff's inmate account.... This was done in violation of Ohio Department of Rehabilitation and Corrections Administrative Rule 5120-5-03...which states... "When a certified copy of judgment from a court of proper jurisdiction is received directing the DRC to withhold funds". No such order was received. Also, it states that the inmate is suppose to be notified, also not done. None of the requirements of this DRC AR were done.*** That means that the money was stolen!! After, the Plaintiff's money was stolen the first time, Plaintiff sent proof the bill mentioned had been paid to the Cashier's Office, hand carried by a RCI staff member. Plaintiff also had $200.00 sent in by his Power of Attorney.... That money was also stolen in the same manner, as commissary reciept shows....***
>
> The defendants involved with this theft were Defendant Chambers.... Defendant Davis and Gilem cashiers. These Defendants are Guilty of Theft under Ohio Revised Code.... Defendant Whitten, attempted to say in his response...that the $200.00 was on the Plaintiff's account July 5, 2005. That is not true, Exhibit G 8 shows BEGIN BAL: 7.52, the amount Plaintiff had access to. Defendant Whitten, also attempted to say that there was a PAY ORDER. That is also not true the order mentioned was a Deficiency Order. That order did not give instructions to seize the Plaintiff's funds. It also does not allow the Cashiers to seize funds without first checking with the court, as per AR 5120-5-03, which when done revield that the bill had been paid in full....

Complaint at 9-10.

In order for a plaintiff to make a claim for relief under 28 U.S.C. §1983 for an alleged deprivation of property under the Due Process Clause of the Fourteenth Amendment, the plaintiff must show that the deprivation occurred as the result of some established state procedure, *not* as the result of the

unauthorized failure of state agents to follow an established state procedure.  <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>overruled on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).  In <u>Parratt</u>, an inmate sued the prison warden because the inmate legally purchased some hobby-related materials that were delivered to the prison and subsequently lost.  The inmate sought relief for the goods purchased under §1983, but the United States Supreme Court rejected the inmate's arguments.  The Court stated:

> The Fourteenth Amendment protects only against deprivations "without due process of law."  Our inquiry therefore must focus on whether the [the inmate] has suffered a deprivation of property without due process of law.  In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process
>
> ***
>
> Although [the inmate] has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure.  Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure.  There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing.  Moreover, the State of Nebraska has provided [the inmate] with the means by which he can receive redress for the deprivation.  The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State.

<u>Id.</u> at 537 and 543 (internal citations omitted).

In the instant case, according to the complaint, Mr. Carter has been deprived of property under color of state law, but because Mr. Carter is alleging theft, the deprivation did not

11

occur as a result of some established state procedure. Under the facts pleaded in the complaint, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established prison regulations when removing money from an inmate account. There is no contention that the established procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Ohio has provided Mr. Carter with the means by which he can receive redress for the alleged stolen money. *See* Ohio Revised Code 2743 *et seq*. Accordingly, because Ohio law provides Mr. Carter with an avenue of recovery to satisfy the requirements of procedural due process, it is recommended that Mr. Carter's claim that the defendants "stole" money from Mr. Carter's inmate account be dismissed for failing to state a claim.

### III.

Based on the foregoing analysis, it is RECOMMENDED that the complaint be dismissed under 28 U.S.C. §1915A for failure to state a claim upon which relief can be granted.

### IV.

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operate as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 f.2d 947 (6th Cir.1981).

                                       <u>/s/ Terence P. Kemp</u>
                                         United States Magistrate Judge